UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SANDRA LANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     Case No. 4:17-CV-2830-SPM |
| | ) |
| | ) |
| | ) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Nancy A. Berryhill, Deputy Commissioner for Operations, Social Security

Administration (the "Commissioner") denying the application of Plaintiff Sandra Landers

("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42

U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned

magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 5). Because I find the decision denying

benefits was supported by substantial evidence, I will affirm the Commissioner's denial of

Plaintiff's application.

### I.  PROCEDURAL BACKGROUND

In June 2014, Plaintiff filed an application for DIB, alleging that she had been unable to

work since October 1, 2012 due to bipolar disorder, depression, dementia, learning disability, and

dyslexia. (Tr. 152-55, 179). Her application was initially denied. (Tr. 94-97). On November 12,

2014, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 98-99). On August 8, 2016, the ALJ held a hearing. (Tr. 51-79). On October 3, 2016, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 32-50). On November 7, 2016, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 147-51). On October 10, 2017, the Appeals Council declined to review the case. (Tr. 1-7). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II. FACTUAL BACKGROUND

At the hearing before the ALJ, Plaintiff testified as follows. Plaintiff was born on November 10, 1955. (Tr. 58). She graduated from high school. (Tr. 59). She last worked in 2012, cleaning a courthouse; she was fired because she was too slow at the job. (Tr. 60, 64-65). In that job, she emptied trash, cleaned bathrooms, and cleaned floors. (Tr. 64-65). She tried working for one day in 2013, but her arms could not do the lifting required due to her carpal tunnel syndrome. (Tr. 61). Plaintiff testified that she did not think she could work a full-time job due to her right knee and her inability to concentrate. (Tr. 66). She has problems concentrating on cleaning and making supper; she is "dumbfounded when it comes to it." (Tr. 68-69). She testified that her concentration issues began around January 2013, when she had a nervous breakdown. (Tr. 67). She testified that aside from her concentration problems, she feels okay mentally as long as she is taking her medicine. (Tr. 68). She also testified that she has thyroid problems and migraine headaches. (Tr. 69, 71).

Plaintiff testified that she sometimes cannot find places when she is driving. (Tr. 72). She has no friends. (Tr. 73). She spends most of her time at home, sitting or lying down. (Tr. 74). She sometimes has trouble sleeping. (Tr. 74-75).

Plaintiff's Function Report was completed by her husband on June 13, 2014. (Tr. 191-98). Plaintiff's husband reported, *inter alia*, that Plaintiff was "unable to function normally in any social construct" (Tr. 191); that she has problems with oral and written communication skills (Tr. 191); that she has memory lapses (Tr. 191); that she becomes combative and argumentative under any kind of normal stress (Tr. 191); that she is easily overwhelmed with any simple mental challenge (Tr. 191); that she quickly loses her temper and becomes aggressive when confronted (Tr. 191); that she has problems with hygiene and grooming (Tr. 191-92); that she has difficulty motivating herself to improve her condition (Tr. 191); that she has to be constantly cajoled to clean herself up to feel better (Tr. 193); that she needs occasional reminders to take medicine (Tr. 193); that she prepares her own meals occasionally, such as sandwiches and snacks, but is totally unmotivated to cook other things (Tr. 193); that she must be strongly urged to assist with household chores (Tr. 193); that she shops and drives (Tr. 194); that she is not able to pay bills because she forgets important payments and gets confused about amounts (Tr. 194); that she cannot do simple math (Tr. 194); that she used to have friends, take walks, and cross-stitch, but now watches television constantly (Tr. 195); that she does not spend time with others (Tr. 195); that she is no longer the person she was starting about four years ago (Tr. 195); that she has problems understanding and following instructions, paying attention, and getting along with others (Tr. 196); and that she could be a danger to herself and others while operating a motor vehicle. (Tr. 198).

With regard to the medical records and other records in the administrative transcript, the Court accepts the facts as presented in the parties' respective statements of fact. The Court will cite specific portions of the transcript as necessary to address the parties' arguments.

### III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since October 1, 2012, the alleged onset date; that Plaintiff had the severe impairments of bipolar disorder and alcohol dependence; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 37-38). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to work involving simple, routine tasks and simple work-related decisions that is low stress work, defined as work involving no interaction with the public, occasional interaction with coworkers and supervisors, occasional changes in work setting, and occasional decision making.

(Tr. 39). At Step Four, relying on the testimony of a vocational expert, the ALJ found that Plaintiff was capable of performing her past relevant work as a housekeeper (*Dictionary of Occupational Titles* No. 323.687-014). (Tr. 44). In the alternative, the ALJ found at Step Five that there were other jobs existing in the national economy that Plaintiff was able to perform. (Tr. 45). Again relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform occupations such as hotel maid (*Dictionary of Occupational Titles* No. 323.687-014). (Tr. 45). Accordingly, the ALJ concluded that Plaintiff had not been under a disability from October 1, 2012, through the date of his decision. (Tr. 45).

## V.    DISCUSSION

Plaintiff argues that the RFC finding is not supported by substantial evidence and that the ALJ did not consider all of the evidence as he was required to do under Eighth Circuit law, the regulations, and the relevant Social Security rulings. Plaintiff appears to argue that (1) the ALJ did not perform an adequate analysis of Plaintiff's symptoms, as required by Social Security Ruling

16-3p and 20 C.F.R. § 404.1529(c)(3); (2) the ALJ erred in his assessment of the opinions of a consultative psychological examiner, Dr. Lauretta Walker, Ph.D.; (3) the ALJ erred by relying on his own inferences from the medical reports rather than relying on "some medical evidence" to support the RFC; and (4) the ALJ made insufficient findings at Step Four regarding Plaintiff's past relevant work.

## A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## B.  The ALJ's Evaluation of Plaintiff's Symptoms

Plaintiff's first argument is that the ALJ did not perform an adequate analysis of Plaintiff's symptoms, as required by Social Security Ruling 16-3p and 20 C.F.R. § 404.1529(c)(3).[1] Specifically, Plaintiff appears to argue that the ALJ gave too much weight to the objective medical evidence, gave too little weight to the statements of Plaintiff's husband, and did not adequately explain the rationale for his findings. Plaintiff's arguments with respect to this issue are directed entirely toward the ALJ's analysis of Plaintiff's mental symptoms.

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the Commissioner must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, 2017 WL 5180304, at *4. In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; the precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence. *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). *See also* SSR 16-3p, 2017 WL 5180304,

---

[1] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints. However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017). This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2. The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. § 404.1529.

at \*7-\*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. § 404.1529(c)(3) (same)[2]. Although "the absence of objective medical evidence to support the complaints" is a proper factor to consider, the ALJ "may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010) (citing *Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008)). *See also* SSR 16-3p, 2017 WL 5180304, at \*5 (explaining that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities," but that we the Commissioner "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual").

SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at \*10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson*, 600 F.3d at 932 (quoting *Moore*, 572 F.3d at 524).

After review of the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's mental symptoms, consistent with SSR 16-3p and the relevant regulations, and that his

---

[2] Several Social Security regulations have been revised, effective March 27, 2017. Throughout this decision, the Court will be applying the version of the regulations that was in effect both at the time of Plaintiff's 2014 application and the ALJ's 2016 decision.

assessment is supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ did not entirely discredit Plaintiff's symptoms (as reported by Plaintiff herself or Plaintiff's husband), but instead found that Plaintiff had severe mental impairments and included several significant mental limitations in the RFC. The ALJ limited Plaintiff to simple, routine tasks and simple work-related decisions, suggesting that the ALJ at least partially accounted for Plaintiff's testimony that she has difficulty concentrating and Plaintiff's husband's observations that Plaintiff becomes confused when paying bills and has problems understanding and following instructions. The ALJ also limited Plaintiff to low-stress work involving no interaction with the public and occasional interaction with coworkers and supervisors and only occasional changes in work setting and occasional decision making, which in part accounts for Plaintiff's husband's opinion that Plaintiff has problems getting along with others, that she becomes combative and argumentative under stress, and that she quickly loses her temper and becomes aggressive when confronted.

To the extent that the ALJ did not find all of Plaintiff's claimed symptoms to create limitations that should be included in the RFC, the ALJ did so only after conducting an appropriate analysis of the record and the relevant factors and making specific findings regarding the consistency of Plaintiff's asserted symptoms with the record. (Tr. 39-44).

First, the ALJ reasonably considered the objective medical evidence. As the ALJ noted, the medical evidence showed that although Plaintiff sometimes had an anxious, irritable, or depressed mood or effect and impaired concentration, and sometimes had problems with her recent memory, Plaintiff was also often observed to have normal mental status examination findings, including findings of appropriate affect, good eye contact, logical and goal-directed thoughts, normal memory and/or cognition, fair or normal judgment and insight, and normal speech. (Tr. 40-43, 237, 260, 292, 346, 349, 364, 410-52).  The ALJ also reasonably discussed Plaintiff's

Global Assessment of Functioning ("GAF") scores[3] and gave significant weight to a GAF of 60 (showing only moderate symptoms) because it was assigned following treatment by a treatment provider who had a longitudinal relationship with Plaintiff, but little weight to a GAF score of 46 (indicating serious symptoms) that was assigned by a consultative examiner. (Tr. 41, 43, 244, 347).

Second, the ALJ reasonably considered the frequency, duration, and intensity of Plaintiff's symptoms, as reported by Plaintiff's medical treatment providers and others. Although Plaintiff's husband indicated that Plaintiff "could not function normally in any social construct" and becomes combative and argumentative under any kind of normal stress, Plaintiff's treatment providers and consultative examiners generally found her to be pleasant and cooperative, and/or to have an appropriate demeanor. (Tr. 237, 244, 247, 253, 260, 264, 267, 270, 273, 277, 283, 346, 349, 361, 364, 371, 375, 378, 410, 412, 414, 417-18, 420, 422, 425, 430, 432, 434, 436, 439, 442, 444, 446;). Plaintiff was also noted to be friendly during her interview for disability benefits. (Tr. 170). In addition, although Plaintiff's husband indicated that she had problems with hygiene and grooming, Plaintiff's treatment providers frequently noted that she was well-groomed or had an unremarkable appearance. (Tr. 38, 246, 250, 253, 260, 263, 266, 269, 279, 282, 360, 363, 366, 371, 374, 377, 380, 383, 410, 412, 414, 418, 420, 422, 425, 430, 434, 436, 439, 442, 444, 446). The ALJ also noted visits at which Plaintiff or her treatment providers reported that she was doing well or that her anxiety, depression, and anger were under control or improving. (Tr. 41-42, 291, 429, 432,

_____

[3] A Global Assessment of Functioning ("GAF") score is based on a "clinician's judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000) ("*DSM-IV-TR*"). A GAF score of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

434, 444, 446, 449). In addition, the ALJ noted that although Plaintiff has some memory issues, she did not need help answering questions either at the hearing or at her field office interview and was able to answer all of the questions well. (Tr. 43, 53-75, 170).

Third, the ALJ reasonably considered the effects of Plaintiff's medication regimen. As the ALJ noted, Plaintiff herself reported that with respect to several of her symptoms, she felt "okay" when taking her medication, and Plaintiff's doctors often noted that her medications and other treatments were improving her symptoms. (Tr, 40-43, 68, 291, 432, 434, 436, 444, 446).

Fourth, the ALJ reasonably considered the various medical opinions in the record. (Tr. 44). In particular, the ALJ gave "significant weight" to the opinion of a Dr. Janette Cross, a consultative examiner whose opinion reflected limitations in Plaintiff's ability to function that were less severe than those reported by Plaintiff and her husband. Dr. Cross opined that Plaintiff would only have minimal difficulty in the ability to understand and remember instructions, and minimal to moderate difficulty in her ability to sustain concentration and persistence in tasks, to adapt to her environment, and to interact socially. (Tr. 44, 350).[4]

Fifth, the ALJ considered Plaintiff's work history. He acknowledged that Plaintiff's generally consistent work history "enhances the persuasiveness of [Plaintiff's] allegations," but he reasonably found that Plaintiff's work history did not entirely outweigh the other evidence. (Tr. 40).

Plaintiff argues that the ALJ relied too heavily on objective medical evidence in assessing Plaintiff's subjective complaints, thereby failing to comply with SSR 16-3p. This argument misses the mark. First, although the ALJ may not rely solely on objective medical evidence to discount a claimant's subjective symptoms, it is entirely proper for the ALJ to consider the objective medical

---

[4] The ALJ's discussion of the medical opinion evidence is discussed in more detail *infra*.

evidence in assessing Plaintiff's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *5; *Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing subjective complaints). Second, the ALJ here did not rely solely on objective evidence, but rather relied on several other sources of evidence as well. "Objective medical evidence" is defined in the applicable regulations as "medical signs and laboratory findings," 20 C.F.R. § 404.1529, such as the results of psychological tests and psychiatric signs such as "abnormalities of behavior, mood, thought, memory, orientation, development, or perception." *Id.* § 404.1528. SSR 16-3p recognizes that in addition to objective medical evidence, the ALJ must consider "other evidence"—a category that includes, *inter alia*, an individual's statements to medical sources or the agency regarding her symptoms; statements from medical sources describing the character of and frequency of an individual's symptoms; statements from medical sources describing whether the claimant's symptoms are worsening or improving over time; statements from medical sources regarding treatment and responses to treatment; statements from the claimant's family and friends; and statements from agency personnel who have interviewed the individual. As discussed at length above, the ALJ discussed and relied on most or all of these categories of "other evidence" in making his determination regarding the limitations caused by Plaintiff's symptoms.

Plaintiff also appears to argue that the ALJ erred by giving more weight to the observations of Plaintiff's medical providers than the observations of Plaintiff's husband. For example, Plaintiff suggests that the ALJ erred by discounting Plaintiff's husband's statement about Plaintiff's grooming problems using Plaintiff's doctor's notes indicating no grooming problems. Plaintiff also suggests that the ALJ erred by discounting Plaintiff's husband's statements regarding Plaintiff's temper and argumentativeness by noting that Plaintiff's psychiatrist indicated that her

medication controlled her anxiety and anger. However, Plaintiff provides no legal basis for her assertion that the ALJ should have given more weight to Plaintiff's husband than to the other evidence in the record, and the Court finds no error. It is clear that the ALJ considered the husband's statements along with all of the rest of the evidence. It is the ALJ's role to weigh conflicting evidence in the record, and the Court may not reweigh the evidence. It was entirely proper for the ALJ to discount the observations of Plaintiff's husband as inconsistent with the record. *See, e.g.*, *See Jones v. Colvi*n, No. 14-CV-3049-MWB, 2016 WL 915236, at *8 (N.D. Iowa Mar. 7, 2016) (holding that a third party's statement's "inconsistency with the preponderance of the medical evidence . . . is plainly an appropriate basis for [discounting it]" (citing *Wright v. Colvin*, 789 F.3d 847, 853-54 (8th Cir. 2015)).

In sum, the Court finds that the ALJ conducted an express evaluation of Plaintiff's claimed symptoms, considered several of the relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. The weight to give a claimant's symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016). Because the ALJ considered the relevant factors and made a decision supported by substantial evidence, the Court must defer to the ALJ's assessment of Plaintiff's subjective symptoms. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

### C. The ALJ's Assessment of the Opinion of Consultative Psychological Examiner Dr. Lauretta Walker

Plaintiff's next argument is that the ALJ erred in his assessments of the opinions of one of the psychological consultative examiners: Dr. Lauretta Walker, Ph.D. On July 31, 2014, Dr. Walker performed a consultative psychological evaluation. (Tr. 344-47). Dr. Walker diagnosed Plaintiff with cognitive disorder not otherwise specified, alcohol abuse in sustained full remission,

and mood disorder with depressive features due to medical condition, and she assigned a GAF score of 46. In her narrative description, she opined that Plaintiff "shows evidence of early dementia." (Tr. 347). Dr. Walker stated that Plaintiff cannot remember recent things, has trouble with everyday tasks, lacks motivation or realization that she needs to take care of her house or her appearance, and can be cajoled into to doing some of those things but was likely to get angry. (Tr. 347). Dr. Walker opined that Plaintiff's ability to understand, remember, and carry out instructions was impaired to a marked degree as evidenced by her performance on a "clock test." (Tr. 347). She also found that Plaintiff's ability to respond appropriately to supervisors, co-workers, and the public was markedly impaired, as evidenced by her isolation and tendency to get angry and not understand what they want. (Tr. 347). Dr. Walker also found that Plaintiff's ability to adjust to change was poor. (Tr. 347).

Under the regulations applicable to Plaintiff's claim, in making a disability determination, the ALJ shall "always consider the medical opinions in [the] case record together with the rest of the relevant evidence" in the record. 20 C.F.R. § 404.1527(b); *see also Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). In weighing medical opinions, the ALJ should consider several factors, including the nature and extent of the treating relationship; the degree to which relevant evidence supports the physician's opinion; the consistency between the opinion and the record as a whole; whether the physician is a specialist in the area in which the opinion is based; and other factors which support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6), (d).

"'[I]t is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). Similarly, when multiple consulting physician opinions exist, it is "the ALJ's task to resolve the differences . . . in the light of the objective evidence." *Dipple v. Astrue,* 601 F.3d 833, 836 (8th Cir. 2010).

The ALJ discussed Dr. Walker's opinion in detail and gave it "limited weight." (Tr. 43-44). The ALJ noted that although Dr. Walker had examined Plaintiff, Dr. Walker's opinions were not supported by the testing performed by another follow-up examiner, Dr. Janette Cross, Ph.D. (Tr. 44). The ALJ also noted that although he agreed with Dr. Walker that Plaintiff had impairment in several areas of functioning, the medical record did not support the level of limitation in functioning reflected in Dr. Walker's opinion. (Tr. 44).

The ALJ then went on to discuss the opinion of Dr. Cross, which he gave "significant weight." (Tr. 44). On September 4, 2014, Dr. Cross administered the Wechsler Memory Scale, Fourth Edition (WMS-IV) to Plaintiff and found that Plaintiff's memory functions were mostly in the average range and her auditory memory functions were in the low average range. (Tr. 350). Dr. Cross also noted that her evaluation suggested, but did not reveal, a cognitive impairment, and that it did not support, but did not rule out, dementia. (Tr. 350). Dr. Cross opined that Plaintiff would have minimal difficulty in the ability to understand and remember instructions, and minimal to moderate difficulty in her ability to sustain concentration and persistence in tasks, to adapt to her environment, and to interact socially. (Tr. 44).

The ALJ then discussed the opinions of the state agency consultants. (Tr. 44). Dr. Aram, Psy.D., found that Plaintiff's WMS-IV memory scores were much higher than would be the case if she had a cognitive disorder. (Tr. 88). Dr. Aram found that Plaintiff could learn and perform at

least moderately complex tasks, interact socially with minimal to moderate public interaction, and adapt to her work environment. (Tr. 88). He also found that Plaintiff did not have limitations in understanding, memory, concentration, or persistence; was moderately limited in the ability to interact appropriately with the general public; was not significantly limited in the ability to accept instructions and respond appropriately to criticism from supervisors; and was not significantly limited in the ability to get along with coworkers and peers. (Tr. 90). A second consultant, Dr. Annette Brooks-Warren, M.D., agreed with Dr. Aram's conclusions. (Tr. 352). The ALJ gave significant weight to those opinions, but he noted that he was assigning greater limitations than they did due to evidence that was developed subsequent to their review. (Tr. 44).

The ALJ's decision makes it clear that he considered Dr. Walker's opinion in light of the relevant factors and the other evidence in the record and reasonably decided to give Dr. Walker's opinion only limited weight. In particular, the ALJ properly considered that Dr. Walker had examined (but not treated) Plaintiff; reasonably weighed Dr. Walker's opinions against the conflicting medical opinion evidence in the record; and reasonably considered medical records contained evidence that cast doubt on Dr. Walker's opinions, including records showing that Plaintiff's treatment providers often (though not always) found her to have normal memory and cognition, to be pleasant and cooperative, and to have an appropriate demeanor.

Plaintiff argues that the ALJ's decision "offers absolutely no citation to the records to support its conclusion" that the medical records do not support the level of functioning described in Dr. Walker's opinion. Pl's. Br., at 13. The Court disagrees. The ALJ specifically referenced the objective testing performed by Dr. Cross as a basis for giving less weight to Dr. Walker's opinion, and then he immediately went on to explain that he was giving "significant weight" to the opinions of Dr. Cross and the state agency consultants. (Tr. 44). Moreover, the ALJ's citation to "the

medical record" not supporting the restrictions in Dr. Walker's opinion is plainly a reference to the extensive discussion of Plaintiff's treatment records immediately preceding the paragraph discussing Dr. Walker's opinion.

It is the ALJ's duty to resolve conflicts in the evidence, including medical evidence, and this Court may not substitute its opinion for the ALJ's. *See Phillips v. Colvin*, 721 F.3d 623, 629 (8th Cir. 2013). The ALJ's weighing of the medical opinion evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Travis v. Astru*e, 477 F.3d 1037, 1042 (8th Cir. 2007); *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006).

### D. Whether the RFC Finding Is Supported by "Some Medical Evidence"

Plaintiff next argues that the RFC finding is not supported by "some medical evidence." Plaintiff also suggests that the ALJ erred because "[t]he decision went beyond evaluating the medical records in determining residual functional capacity, and attempted to become its own medical expert, and rendered medical conclusions without recitation to medical evidence or authority." Pl's Br., at 15. Plaintiff suggests that because the RFC is at odds with both Dr. Walker's and Dr. Cross's opinions, the RFC is not supported by medical evidence.

A claimant's RFC is "the most a claimant can do despite [the claimant's] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC "is a medical

question." *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's residual functional capacity, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Id.* at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). An RFC assessment that is "not properly informed and supported by 'some medical evidence' in the record" cannot stand. *Id.*

A review of the record demonstrates that the ALJ's RFC assessment is supported by "some medical evidence." As discussed above, the ALJ gave significant weight to several of the medical opinions in the record, including the opinion of psychological consultative examiner Dr. Cross and the opinions of the two state agency medical consultants. Dr. Cross's opinion that Plaintiff would have only minimal difficulty in the ability to understand and remember instructions, and minimal to moderate difficulty in her ability to sustain concentration and persistence in tasks, to adapt to her environment, and to interact socially, generally supports the RFC finding limiting Plaintiff to simple, routine tasks in a low-stress environment involving no interaction with the public, occasional interaction with coworkers and supervisors, occasional changes in work setting, and occasional decision making. Dr. Aram's opinion that Plaintiff could learn and perform at least moderately complex tasks, interact socially with minimal to moderate public interaction, and adapt to her work environment is also supportive of the RFC finding, even though it would have supported an RFC with fewer limitations than the ALJ found. (Tr. 88, 90).

The fact that the RFC does not precisely mirror any specific medical opinion in the record does not suggest any error on the part of the ALJ. It is well established that he ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in determining a claimant's RFC." *Martise v. Astrue*, 641 F.3d 909, 927

(8th Cir. 2011) (quotation marks omitted). Instead, "[i]t is the ALJ's responsibility to determine [claimant's] RFC based on all the relevant evidence." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted). Here, although the ALJ's RFC was not identical to any of the particular opinions in the record, the ALJ determined Plaintiff's RFC based on all of the evidence in the record, including medical opinion evidence and other evidence. The Court finds no error.

In sum, the Court finds that the RFC finding is supported by substantial evidence, including medical opinion evidence and other evidence. The Court acknowledges that the record contains conflicting evidence, including medical opinion evidence, regarding the extent of Plaintiff's mental limitations, some of which would support limitations greater than those assessed by the ALJ. However, the ALJ reasonably weighed the evidence in a manner consistent with the evidence and the regulations. The ALJ's decision fell within the "zone of choice," and it is not the role of this Court to reweigh the evidence presented to the ALJ. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

### E. The Analysis at Steps Four and Five

Plaintiff's final argument is that the ALJ erred at Step Four in finding that Plaintiff could perform her past relevant work as a housekeeper.

At Step Four of the five-step disability evaluation process, the ALJ was required to evaluate whether Plaintiff retains the RFC perform her past relevant work. *See Wagner v. Astrue,* 499 F.3d 842, 853 (8th Cir. 2007). Plaintiff is not disabled if she can perform either "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.; see also Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000). In order to make a finding at Step Four,

the ALJ must "'make explicit findings regarding the demands of the claimant's past work.'" *Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999) (quoting *Groeper v. Sullivan*, 932 F.2d 1234, 1239 (8th Cir. 1991)). "The ALJ may discharge this duty by referring to the specific job descriptions in the *Dictionary of Occupational Titles* that are associated with the claimant's past work." *Id.*; *see also Young v. Astrue*, 702 F.3d 489, 491 (8th Cir. 2013). The ALJ is next required to compare the demands of the claimant's past relevant work with the claimant's RFC to determine whether the claimant can perform that work. *Young*, 702 F.3d at 492.

Here, the vocational expert testified that Plaintiff's past work as a housekeeper corresponded to *Dictionary of Occupational Titles* No. 323.687-014. (Tr. 76), and that the position was performed at the light exertional level with a Specific Vocational Profile (SVP) of 2. (Tr. 76). The ALJ then asked the vocational expert whether a hypothetical individual of Plaintiff's age and education who had all of the limitations in the RFC could perform that work. (Tr. 76). The vocational expert testified that she could. (Tr. 76). Based on this testimony, the ALJ found in his decision that Plaintiff was capable of performing her past relevant work as a housekeeper. (Tr. 44). The ALJ specifically found that this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 44).

Plaintiff's first argument is that the ALJ erred by failing to make explicit findings regarding the demands of Plaintiff's past relevant work before finding that Plaintiff was capable of performing that work. That argument is without merit. The ALJ's reference to the *Dictionary of Occupational Titles* number corresponding to Plaintiff's past work as a housekeeper was sufficient to discharge his duty to make explicit findings regarding her past work. *See Young*, 702 F.3d at 491; *Pfitzner*, 169 F.3d at 569; *Briegel v. Berryhill*, No. 4:16-CV-00917-DGK-SSA, 2017 WL 6039488, at *4 (W.D. Mo. Dec. 6, 2017) (rejecting the argument that the ALJ erred by failing to

make explicit findings as to the demands of a claimant's past relevant work where the vocational expert testified about the *Dictionary of Occupational Titles* number corresponding to that work).

Plaintiff's second argument is that the ALJ erred at Step Four because the hypothetical question posed by the ALJ to the Vocational Expert did not capture all of the consequences of Plaintiff's impairments. A hypothetical question posed to a vocational expert "must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001). When a hypothetical question fails to include all of a claimant's relevant impairments, the vocational expert's answer to that question does not constitute substantial evidence. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). By contrast, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Buckner v. Astru*e, 646 F.3d 549, 560-61 (8th Cir. 2011) (quoting *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). The question "'needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.'" *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). In formulating the hypothetical, "the ALJ may exclude any alleged impairments that [the ALJ] has properly rejected as untrue or unsubstantiated." *Hunt*, 250 F.3d at 625.

Here, it is undisputed that the question posed to the vocational expert included all of the limitations in the RFC. The Court has already found that the RFC was supported by substantial evidence, and Plaintiff identifies no specific limitations that should have been included in the question posed to the vocational expert. Therefore, the vocational expert's answer to that question constitutes substantial evidence. *See Buckner*, 646 F.3d at 560–61.

Finally, even assuming there was some error at Step Four, any such error was harmless because the ALJ's alternative finding at Step Five that there are other jobs Plaintiff could perform

is also supported by substantial evidence. At Step Five, the Commissioner bears the burden of establishing that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001). Here, in response to the same hypothetical posed to the vocational expert with respect to Step Four, the vocational expert testified that other available jobs would be hotel maid (*DOT* No. 323.687-014, light, SVP 2, 800,000 jobs nationally). (Tr. 77). Based on that testimony, the ALJ made an alternative finding at Step Five that there were other jobs Plaintiff could perform. (Tr. 45). Because the hypothetical posed to the vocational expert adequately captured the consequences of Plaintiff's impairments that were supported by the record, the response to that hypothetical question constitutes substantial evidence to support the ALJ's alternative finding at Step Five. *See Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008) (finding substantial evidence supported the ALJ's conclusion at step five where the ALJ's hypothetical posed to the VE contained all of the concrete consequences of the plaintiff's physical deficiencies).

## VI.  CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.


_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of March, 2019.